UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Omni MedSci, Inc.,** *Plaintiff/Counter-Defendant*, v. **Apple Inc.,** *Defendant/Counter-Plaintiff.* | **Case No. 2:18-cv-134-RWS** **JURY TRIAL DEMANDED** |

**JOINT MOTION FOR ENTRY OF
PROTECTIVE ORDER**

Plaintiff/Counter-Defendant Omni MedSci, Inc. ("Omni") and Defendant/Counter-Plaintiff Apple Inc. ("Apple") move for entry of the Protective Order attached hereto as Exhibit A. The parties have met and conferred to resolve most issues associated with the Protective Order, but have been unable to resolve certain disputes relating to (i) the patent prosecution bar, and (ii) the disclosures required as a prerequisite to receiving protected materials.

The parties have summarized their respective positions on each dispute below. The disputed language proposed by each party is provided in-line in the Protective Order attached hereto as Exhibit A.

A.     The Patent Prosecution and Acquisition Bars

   1.     Section 6(b): Scope of the "Acquisition Bar"

      a.     Omni's Position

An "acquisition bar" generally prohibits a party who has received protected materials from acquiring patents or patent applications relating to the technology in suit. The Court's Sample Protective Order does not include an "acquisition bar." And, when Apple <u>agreed</u> to the Protective Order in *VirnetX, Inc. v. Apple, Inc. et al.*, Case No. 6:10-cv-00417 (DKT146) (the "*VirnetX* Protective Order"), Apple did not require an "acquisition bar" to protect its information. Because Omni (and the sole inventor of the asserted patents) does not purchase patents or patent applications, however, it can accept an acquisition bar narrowly-tailored to itself. Apple, however, seeks to additionally prevent Omni's *counsel* and *expert witnesses* from advising on, or participating in, the acquisition of patents in transactions unrelated to Omni or this case. There is no need for a so-called "acquisition bar" because *agreed* language of the Protective Order expressly prohibits *all* individuals who receive protected materials from using that material for *any* purpose than this action:

> Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(Proposed Protective Order Para. 1.(a).)

> <u>Basic Principles</u>. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or

function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(Proposed Protective Order Para. 6.(a).)

**Practical Effect:** **(1)** While Omni is not in the business of acquiring patents, this language will prevent Omni's *counsel* and Omni's *experts* from advising *other* clients, unrelated to Omni or this litigation, regarding the acquisition of patents or patent portfolios having any relation to the technology at issue in this case.  **(2)** This language will negatively impact Omni's ability to secure technical experts in the relevant technology area, for fear that the experts will be unable to work for other clients in their area of expertise.

      **b.**      **Apple's Position**

Defendants argue that only Plaintiff, to the extent it is given access to Apple's "Confidential-Attorneys Eyes' Only" information, should be barred from acquiring patents within the narrowly defined technology space relevant to this litigation. Plaintiff therefore concedes that knowledge of Apple's confidential technology would inevitably affect Plaintiff's decision-making regarding the desirability of such patents, even if inadvertently.  This same logic applies equally to all individuals permitted access to Apple's Confidential-Attorneys Eyes' Only information, including counsel for the Plaintiff and its experts.

The well-established purpose of a prosecution bar – to prevent those who obtain access to contents of the confidential information from being involved in competitive decision-making – applies equally in the context of patent acquisitions. *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378, 1380-81 (Fed. Cir. 2010) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."); *E–Contact Techs., LLC v. Apple, Inc.*, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012) ("Counsel for Plaintiff has acquiesced to the imposition

of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO. Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents."); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214 (E.D. Tex., March 14, 2008) (the "business of acquiring patents and asserting them against allegedly infringing companies" is "competitive decision mak[ing]").

Any contention that Apple's outside counsel or its experts can segregate their knowledge from this case from work they do acquiring patents or counseling others on the acquisition of patents in this specific technology space is untenable. Avoiding the use of Apple's confidential information when it would be helpful in counsel's work is nearly impossible, as the Federal Circuit observed in *In re Deutsche Bank*. 605 F.3d at 1378, 1380-81 ("Courts have recognized [] that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality … may not prevent inadvertent compromise."). Further, Plaintiff's reference to a protective order entered in 2011 in a separate case involved different parties (including six joint defendants), different technology, and was proposed in an entirely different market and legal landscape that is not relevant to the issues currently before this Court.

Apple's proposed language is narrowly tailored to affect only those individuals who are involved in this litigation and that are receiving Apple's most confidential information – "Confidential – Attorney's Eyes Only" materials. With respect to the Plaintiff and its experts, Apple proposes a narrow bar for two years following the final resolution of this action. With respect to counsel, Apple requests that counsel refrain from counseling clients regarding the acquisition of patents or patent applications in this technology during the pendency of this action,

including any appeals. It is not unreasonable to expect these individuals to refrain from acquiring or advising potential Apple competitors on the acquisition of patents in the exact technology at issue in this litigation during the pendency of this litigation and while they still have access to Apple's protected material. Indeed, with respect to counsel for the Plaintiff, other attorneys in the firm that did not receive such information could still handle such matters for clients during this time period. Likewise, this provision will not negatively impact a technical expert's ability to work for other clients; rather, this language would simply prevent experts from learning Apple's highly confidential information and then using that information, even inadvertently, *to acquire* or to advise others regarding the *acquisition of* patents in this specific technology space while in possession of Apple's most highly confidential information.

    2.    **Section 6(b): Use of Protected Materials in Patent Office Proceedings**

        a.    **Omni's Position**

Apple seeks to prohibit Omni from using Apple's relevant discovery materials in patent validity challenges (that Apple institutes) before the U.S. Patent Trial and Appeal Board ("PTAB"). Apple's prohibition is not in the Court's Sample Protective Order. Omni should have the right to submit, under seal, Apple's relevant protected materials to rebut arguments Apple makes in PTAB proceedings. **Practical Effect:** Apple is likely to allege to the PTAB that the asserted patents are invalid as obvious under 35 U.S.C. §103. In response to that assertion, Omni should have the right to present evidence to the PTAB demonstrating non-obviousness, including but not limited to the commercial success of the patented device, Apple's praise of the inventions, and Apple's evidence of copying. Because Apple invited the inventor of the asserted patents to Apple's offices on numerous occasions to discuss his inventions and their applications to Apple's products, Apple likely possess evidence of copying, praise of the invention, commercial success,

and other time-honored evidence of non-obviousness. Apple does not dispute that it possesses such evidence. If Apple's proposed langauge is accepted, however, Omni will be prohibited from presenting Apple's relevant evidence to rebut Apple's obviousness arguments to the PTAB. Such a scenario is fundamentally unfair to Omni. Omni should be permitted to submit relevant evidence to the PTAB, under seal.

   **b.**  **Apple's Position**

As the parties have agreed, it is a basic principle of a protective order that all protected material produced in this litigation is to be used solely for this litigation or any related appellate proceeding and for no other purpose whatsoever. *See* Exhibit A at § 6(a). Indeed, this Court's sample Protective Order includes a similar provision prohibiting such use of Protected Material in Section 7: "Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose." Although not dispositive to the issues currently before the Court, the 2011 *VirnetX* Protective Order that Plaintiff cites also included the provision that "[a]ll Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function." *VirnetX* Protective Order at § 5(a).

Apple's Protected Material in simply not relevant to a proceeding regarding the validity of Omni MedSci's patents. Indeed, Plaintiff's claim that Apple *may* possess some confidential evidence that Omni MedSci believes may be relevant to the objective indicia of nonobviousness is speculative, at best. And, to the extent Omni MedSci may need to argue such considerations of

6

non-obviousness to the Patent Office at some point in the future, it can certainly do so without relying upon Apple's confidential and proprietary information or by following proper procedures for seeking documents in those proceedings. An advance exception to this agreed-upon language that indiscriminately allows Plaintiff to use Apple's Protected Material in another proceeding is not appropriate in this case.

**B.     Disclosures Required as a Prerequisite to Receiving Protected Materials**

   **1.     Section 10(vi): Disclosure of Change of Involvement**

      **a.     Omni's Position**

Apple seeks to impose an ongoing obligation, even after the litigation is over, to notify Apple of any "change" of a Person's (*i.e.*, expert's) "involvement in the design, development, operation or patenting of wearable electronic devices, or the acquisition of intellectual property assets relating to wearable electronic devices." Neither the Court's Model Protective Order, nor the *VirnetX* Protective Order, require such disclosures. The language Apple proposes is unnecessary in view of the parties' *agreed* limits on the use of protected materials an expert may receive in discovery:

> Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(Proposed Protective Order Para. 1.(a).)

> Basic Principles.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(Proposed Protective Order Para. 6.(a).)

**Practical Effect:** Apple's proposed language would impose an undue burden on the "Person" (expert), and on counsel, to monitor events related to the "Person" to ensure that there is no violation of this provision. Moreover, Apple's proposed language is ambiguous in terms of what a "change" in "involvement" is for each of the broad enumerated categories. This ambiguity could give rise to an unfair claim that Omni's expert has violated the Protective Order.

Apple's proposed language also requires disclosure of the "the acquisition of intellectual property assets relating to wearable electronic devices." The issues regarding the acquisition bar are addressed above in Section 6(a). If the Court agrees that the acquisition bar should be limited to Omni, then no acquisition disclosures are needed for the expert under this section. If the Court rejects Omni's proposed limit on the scope of the acquisition bar, then this clause is unnecessary because such acquisitions would be prohibited by the bar.

        b.        **Apple's Position**

This provision is defined narrowly to require those persons given access to Apple's Protected Material to provide notice of changed circumstances that would clearly be relevant to Apple's ability to protect the confidentiality of its proprietary information. The proposed language does not require policing on behalf of Plaintiff's counsel. Rather, the language simply proposes that those with access to Apple's Protected Material update the information they have already provided in their original notice pursuant to the agreed-upon provisions of the Protective Order to the extent any changes occur. Ex. A § 10(a). Only the most relevant changes would need to be updated – those related to the accused technologies in this case – and only for a limited period of time.

Apple proposes this language for the same reason that parties traditionally agree to provide an opportunity to object to the other party's experts before disclosing confidential information.

Likewise, a mid-case or ensuing affiliation with a competitor poses the same risk. In such a scenario, the parties should be able to re-evaluate their objections to the disclosure of their confidential information. Specifically, Apple must have the opportunity to raise any objections to changed circumstances that would allow individuals who received its confidential material to then work on competitive technology immediately thereafter. Apple's simple request for notification of such changed circumstances is narrowly tailored with respect to time and technology and is justified in this case.

Date:  July 16, 2018

Respectfully submitted,

/s/ Thomas A. Lewry   (*with permission*)
Thomas A. Lewry LEAD COUNSEL
     (MI Bar No. P36399)
John S. LeRoy (MI Bar No. P61964)
Robert C. J. Tuttle (MI Bar No. P25222)
John M. Halan (MI Bar No. P37616)
Christopher C. Smith (MI Bar No. P73936)
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email:  tlewry@brookskushman.com
            jleroy@brookskushman.com
            rtuttle@brookskushman.com
            jhalan@brookskushman.com
            csmith@brookskushman.com

T. John Ward, Jr.
Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Omni MedSci, Inc.*

/s/  Kelley A. Conaty
Kelley A. Conaty (TX Bar No.: 24040716)
**SIDLEY AUSTIN LLP**
2021 McKinney Avenue Suite 2000
Dallas, TX 75201
Phone: (214) 981-3300 / Fax: (214) 981-3400
Email: kconaty@sidley.com

Melissa Richards Smith (TX Bar No. 24001351)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Phone: (903) 934-8450 / Fax: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Ching-Lee Fukuda
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Phone: (212) 839-5300 / Fax: (212) 839-5599
Email: clfukuda@sidley.com

David L. Anderson (*pro hac vice*)
LEAD ATTORNEY
Irene Yang
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 772-1200 / Fax: (415) 772-7400
Email: dlanderson@sidley.com
Email: irene.yang@sidley.com

Jeffrey Kushan
Anna Weinberg (*pro hac vice*)
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Phone: (202) 736-8000 / Fax: (202) 736-8711
Email: jkushan@sidley.com
Email: aweinberg@sidley.com

*Attorneys for Apple Inc*.

2

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on July 16, 2018.

                                                                                      */s/ Kelley A. Conaty*